*AMPT, A TAXPAYER, ETC. v. CINCINNATI (CITY) ET AL.

1. INTERPRETATION OF 92 O. L., 608, AS TO SUFFICIENCY OF PLANS, AND SPECIFICATIONS FOR THE NEW WATERWORKS FOR THE CITY OF CINCINNATI.

The specifications and detailed drawings mentioned in the provision of the statute found in 92 O. L., 608, which provides for the appointment of trustees and commissioners to build the new waterworks for the city of Cincinnati, are not required to contain the minutest detail in which every part of the machinery was to be drawn and specified; but it is sufficient if such commissioners give specific and minute descriptions as to what the machinery was to accomplish, the exact kinds of material to be used, the manner in which all the work should be done and the exact nature and kind of all the parts which were given, how all such machinery should be constructed, such as valves, riveting, bolts, etc.

2. DELEGATION OF POWERS BY TRUSTEES TO THE CHIEF ENGINEER.

Where such trustees delegate certain of their powers to the chief engineer to determine as to certain matters, it does not amount to such delegation of power in the sense that it is taking away from the trustees the power vested in them. The duties the chief engineer performs are done as the agent and the employee of the trustees. He uses his technical knowledge as their agent, and he is entirely subject to the control of the trustees, and what is done is by their authority, and is under their control, and his exercise of this power is their exercise of it.

3. PROVISIONS AS TO ALTERATION AND CHANGES.

There is no objection to the provision in the contract providing for alternative bidding, nor to the provisions that alterations and modifications are provided for. In practice, such changes have been found necessary, and in the nature of things must be.

---

*The judgment in this case was affirmed by the Supreme Court, without report, May 16, 1899; 60 O. S.—

Ampt v. City of Cincinnati.

APPEAL from the Court of Common Pleas of Hamilton county.

SWING, J.

This is an action in this court on appeal. It is an action by a taxpayer on behalf of the city of Cincinnati against the city and said August Herrman and others, trustees and commissioners of waterworks of said city, and is brought to enjoin the performance of a contract heretofore entered into between said trustees for said city and the Lane & Bodley Company, whereby said company had contracted to furnish to said city certain waterworks pumping engines, boilers, etc., an electric crane and an elevator in connection with the building of new waterworks by said trustees for said city.

This action is brought by Mr. Ampt in good faith and in a friendly spirit with a view to having very important questions involving large amounts finally determined.

The petition and the amendment to the same contain nineteen pages of typewritten matter, and the answer contain eighty-nine pages of printed matter. No attempt will be made on this occasion to set forth at length the statements in either. It would occupy too much time, and besides a proper understanding of the real objections to the contract can be arrived at without it.

The claim of the plaintiff is thus summarized by him in his petition :

"Plaintiff says that by reason of the failure of the commissioners of the waterworks to provide for and adopt plans and drawings for said engines and electric crane before entering into said contract and by reason of failing to provide complete, full and exact specifications therefor, said contract is void as an entirety. Further, that for the additional engine and the electric crane it is void because neither of said items of work was named in the advertisement calling for sealed proposals."

There is no question of bad faith raised. No bidder is complaining that the contract awarded is not to the lowest and best bidder ; that the advertisement for bids was not properly made so as to give to bidders the best opportunity to frame their bids thereon and at the same time obtain for the city the most favorable bids for the best work to be furnished. In fact, in every way it is conceded that the contract is most favorable to the city. In the first place, the contract was given to a home concern, and while this fact could make no difference in awarding the contract, as the lowest bidder only could be considered, still everyone must feel that it was fortunate for the city that the work was to be done here. It furnishes employment for men who must help pay for it, and in that way contributes to the happiness and welfare of the city, and at the same time the taxpayer is protected.

Then again it was asserted and not denied at the hearing of the case, that if this contract is set aside and another one made, the latter will probably exceed the former by at least twenty per cent. in cost.

The course pursued by the trustees in this matter was not determined upon until after the trustees had communicated with all the builders of such work in the United States and got their idea as to the proper way to formulate an advertisement for bids. They also asked for and received advice from the chamber of commerce, the business men's club, and all other public bodies of said city which would likely be interested in the matter. The opinion expressed by all these was the same. It coincided with the views of the trustees and their engineers, and it

resulted in the trustees adopting the course pursued. The great pains displayed by the trustees in endeavoring to arrive at a correct conclusion as to this important matter certainly entitled them to commendation. The difficulty that confronted them arose when they attempted to construe the statute with reference to the subject matter of the pumps and engines. This provision of the statute is found in 92 O. L., 608, and is as follows:

"Said commissioners shall, before entering into any contract, cause plans and specifications, detailed drawings and forms of bids to be prepared, and careful estimate of cost to be made; and when adopted by them, they may, in their discretion, cause the plans and drawings to be multiplied and printed, by photographing, lithographing or other suitable process, and the specifications and forms of bids, contracts and bonds to be prepared, and have the same printed for distribution among the bidders."

To what extent were detailed drawings and specifications to go? Must it be the minutest detail in which every part of the machinery was to be drawn and specified, or was it sufficient to give specific and minute specifications as to what the machinery was to accomplish, the exact kinds of material to be used, the manner in which all the work should be done, and the exact nature and kind of all the parts which were given, how all such machinery should be constructed, such as valves, riveting, bolts, etc.? The specifications of this class cover sixteen pages of printed matter, and as far as it goes it is as specific as it could well be. The detailed drawings and specifications, however, did not go to the extent of showing in detail every part and proportion of the work. What is called the "working plans" of this machinery will cover more than a thousand pages.

The question is: Did the law require that the specifications and drawings should go to this extent? Possibly to give the law a literal interpretation would require the detailed drawings and specifications to include each and every part of the machinery, and in doing this the trustees might have omitted to require that the machinery should perform certain work, as they did do; for by this contract each of the pumps must have a capacity to pump thirty million gallons of water every twenty-four hours, and must stand the test of one hundred and eighty million gallons of water in six consecutive days; and furthermore must perform the work required of it for one year to the satisfaction of the trustees; and during that time all alterations and repairs are to be borne by the builders.

Certainly what the trustees wanted to get for the city was engines and pumps that would pump a certain quantity of water in a given time. It was wholly immaterial to them where each nut, bolt, valve and piece of material was to be located. All such details were non-essentials. It is to be borne in mind that these engines and pumps were to be made to do a certain work. In one sense, they were not inanimate like a house or building, but they had a great work to perform, and it must be done in the most economical and approved way. What the trustees did was to leave out the non-essentials in their specifications and drawings, but all the essentials of the result desired, as to the capacity of the pumps to perform the work required, and the manner of the workmanship, and the materials to be used in their construction, are most specifically looked after and detailed.

In construing statutes it is a well known and valuable rule of the law that a thing may be within the law and yet not within the letter of the law, and a thing may be within the letter of the law and still not within the law; and so it seems to us in this case that it is within the letter of the law that these specifications and detailed drawings mentioned in the statute should give every detail of every part of this great and complex machinery, but we do not believe it is within the meaning of the law that they should do so.

The first object of the law was to afford to the people who were to pay the cost of this work the assurance that it should be done for the least amount of money, and these provisions were placed there to bring about this result. Of course, the law is founded upon the theory that the people are to get work which is the best possible to be had. Bearing these two fundamental ideas in mind we apply them to the subject matter.

The machinery required for this work is only capable of being built by ten firms in the United States. Of these eight were bidders on this work. The difficulty that presented itself at once to the trustees in making exact drawings and specifications of every part, was this: Machinery of this magnitude has as yet not reached that state of perfection, and probably never will, where all builders build to any certain and fixed plan as to details. In this respect each builder has his own detailed plans, and no two are alike, and their tools and patterns are made to produce their own work after their own plans; therefore, if the detailed plans of this complicated work was to be given in all of its parts, the trustees were either compelled to adopt the plans of one of the concerns which had produced such work, or else get up a plan of the same kind of their own. It will be seen at once that the object of the law would be defeated if the board were to adopt the detailed plans of any one of the firms, for this would virtually destroy all bidding by firms other than the one whose plan was adopted, and place the trustees at the mercy of that firm. The price to the city would in all probability be much greater than it should be. This would destroy competition in bidding, the very thing the law was intended to bring about, and this must not be except from necessity.

But a still greater difficulty met the trustees in getting up a detailed plan of their own. The evidence showed that at the present time there is only one such pump in operation in the United States although numerous such pumps have been built, but only to prove costly failures. And no city is able to furnish a better example of this than the city of Cincinnati with its celebrated Shields pump, which has cost the city thousands upon thousands of dollars, and is now perfectly worthless, its only value being as old junk.

In the first place, the work and time required to produce these plans is very great, the testimony of the chief engineer being to the effect that it would require a year and a half to do it. And in the next place, no firm could construct such machinery so well or so cheaply as it could machinery of its own pattern and design. And then lastly, which is the most important of all, it would when constructed be more or less experimental, and might not perform the work required of it.

To pursue either plan it was apparent would certainly defeat the intent and purpose of the law and impose a great expense upon the city, the only excuse for which would be an attempt to adhere to the letter of the law. To do this we think would be sticking in the bark. It

would be sacrificing the purpose and essence of the law. No one is complaining that the trustees have not acted with the greatest care and wisdom in the matter, or that the rights of the people have not been most carefully guarded, or that the very best results possible have not been obtained. The only claim that can be justly made is that the letter of the law has not been followed, and the answer is that it should not be followed, and that the real purpose of the law would be defeated by adhering to it.

The other questions raised in the case we consider as of a minor importance, and shall only notice a few of them briefly.

The objection that the fourth engine and the crane were not in terms mentioned in the advertisement we do not regard as fatal to the contract. They were carefully mentioned in the specifications, and there can be no question but what all bidders were fully informed as to the work desired, and no bidder is complaining. It would be idle speculation to say what might have been the result if these matters had been set forth at length in the advertisement. As already said, eight of the ten builders of such work in the United States were bidders, and all these bid with a view to such specifications, and must have been fully informed as to the same.

As to the further question that the trustees delegated certain of their powers to the chief engineer to determine as to certain matters, we do not consider that there was such a delegation of power in the sense that it is a taking away from the trustees the power vested in them. The duties the chief engineer performs are done as the agent and the employee of the trustees. He uses his technical knowledge as their agent, and he is entirely subject to the control of the trustees, and what is done, is by their authority, and is under their control, and his exercise of this power is their exercise of it.

We see no objection to the alternative bidding, nor do we see any objections to the provisions in the contract that alterations and modifications in the contract are provided for. In practice such changes, it has been found, have always been necessary, and in the nature of things must be. This provision is for the protection and benefit of the city. Changes are constantly made in such work. The chief engineer testified that in the last twenty-five years changes had been made in the construction of such work to the extent that engines and pumps of the same class do three times the work that was formerly done by them. It is not at all likely that we have reached perfection now. In all likelihood improvements will be made in the future as in the past, and it was with a view to obtain for the city the advantages of such improvements that such provisions were inserted in the contract, and we can certainly see no objection that can be properly urged by the city why it should not be thus protected. If it could be in reason urged that it might injure the city, the case would be entirely different.

The petition of the plaintiff will be dismissed.

*W. M. Ampt*, for plaintiff,

*Ellis G. Kinkead*, corporation counsel.

*Wade H. Ellis, J. B. Frenkle, Thomas McDougal, contra.*